# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

IN RE:

    MADELINE WILKE,    )
    )
WESLAKE COUNTRY CLUB ASSOCIATION,    )
an Illinois Not-For-Profit Corporation,    )    Case Number: 18-11054
    )    Chief Judge Pamela S. Hollis
    Creditor,    )    Bankruptcy - Chapter 13
    )
    v.    )
    )
MADELINE WILKE,    )
    Debtor.    )

## NOTICE OF MOTION

TO:    See Attached Service List

    On August 24, 2018 at 10:45 a.m., or as soon thereafter as counsel may be heard, I shall appear before the Honorable Chief Judge Pamela S. Hollis, or any judge sitting in her stead, at the Joliet City Hall, 150 West Jefferson Street, 2nd Floor, Joliet, IL 60432, and then and there present the attached ***Secured Creditor Weslake Country Club Association's Motion for Relief from Stay.***

CHARLES M. KEOUGH/DAWN L. MOODY
GABRIELLA R. COMSTOCK/JONATHAN D. WASSELL
BRYAN M. WILEY
KEOUGH AND MOODY, P.C.
Attorney Number 06283567
Attorney for Creditor
114 East Van Buren
Naperville, IL 60540
(630) 369-2700


  /s/ Dawn L. Moody
Attorneys for Creditor

## PROOF OF SERVICE

    I, DAWN L. MOODY, an attorney, on oath state, I served this Notice and Motion for Relief from Stay to the persons named on the service list via the method listed at or before 4:00 p.m. on August 14, 2018.

                                                              /s/ Dawn L. Moody

**KEOUGH & MOODY COLLECTS DEBTS FOR ASSOCIATIONS.  ANY AND ALL INFORMATION OBTAINED CAN AND WILL BE USED FOR THIS PURPOSE.**

## **SERVICE LIST**

1.   Madeline Wilke - via regular mail
     161 Whitehill Dr.
     Romeoville, IL 60446

2.   Sean M. McNulty - via regular mail and CM/ECF
     The Semrad Law Firm, LLC
     20 S. Clark Street, 28th Floor
     Chicago, IL 60603
     smcnulty@semradlaw.com

3.   Glenn B. Stearns - via regular mail and CM/ECF
     801 Warrenville Road, Suite 650
     Lisle, IL 60532

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: | ) |
|     MADELINE WILKE, | ) |
| | ) |
| WESLAKE COUNTRY CLUB ASSOCIATION, | ) |
| an Illinois Not-For-Profit Corporation, | )   Case Number: 18-11054 |
| | )   Chief Judge Pamela S. Hollis |
|                  Creditor, | )   Bankruptcy - Chapter 13 |
| | ) |
|             v. | ) |
| | ) |
| MADELINE WILKE, | ) |
|                  Debtor. | ) |

## SECURED CREDITOR WESLAKE COUNTRY CLUB ASSOCIATION'S MOTION FOR RELIEF FROM STAY

NOW COMES the Secured Creditor, WESLAKE COUNTRY CLUB ASSOCIATION, by and through its counsel, Charles M. Keough, Dawn L. Moody, Gabriella R. Comstock, Jonathan D. Wassell and Bryan M. Wiley of Keough and Moody, P.C. who respectfully prays for the entry of an order granting relief from the automatic stay pursuant to 11 U.S.C. Section 362(d), and in support thereof states:

(1) On April 16, 2018, the above captioned Chapter 13 was filed.

(2) The Debtor, MADELINE WILKE is the owner of a unit commonly known as 161 Whitehill Dr., Romeoville, IL 60446.

(3) The foregoing property is part of the Weslake Country Club Association and is subject to the provisions of the Declaration of Covenants, Conditions and Restrictions for Weslake Country Club (hereinafter "Declaration"), which was recorded as Document No.R96-027529 in the Office of the Will County Recorder of Deeds, and subsequently amended.

(4)   The Association is a party in interest and is secured by virtue of its Declaration.

(5)   Pursuant to the terms of the Declaration, the Debtor is required to make monthly assessment payments to the Creditor in the amount of $70.00. If assessments are not paid by the 15th day of the month in which they are due, a late charge in the amount of $15.00 is assessed to the account.

(6)   Pursuant to the terms of the Declaration, the Debtor is required to pay all expenses connected with proceedings to collect unpaid assessments and enforce the Declaration terms. These amounts are assessed to the Debtor and deemed a part of the Common Expenses.

(7)   The Debtor has failed to make current monthly assessment payments to the Creditor in conformity with the Declaration since prior to the filing of this bankruptcy action. Attached hereto is a true and accurate statement of account.

(8)   As of August 10, 2018, the amount due to the Creditor for post-petition assessments, late fees, special assessments, attorney's fees and violations is $610.00.

(9)   The property commonly known 161 Whitehill Dr., Romeoville, IL 60446 is not necessary for the Debtor's successful reorganization.

(10)  The Creditor lacks adequate protection due to the Debtor's failure to make regular, current monthly payments to the Creditor.

(11)  Creditor notified Debtor's attorney of the post-petition default. The post petition default has not been cured in response to said notice. Attached is a true and accurate copy of said correspondence.

(12) Debtor's failure to make assessment payments jeopardizes the Creditor's ability to meet its scheduled budget or fund reserves, both of which are essential to the maintenance, upkeep, repair and replacement of the common areas as required by the Creditor pursuant to the Declaration recorded in Will County, Illinois.

(13) For the reasons set forth above, it would be inequitable to delay the enforcement of any order granting relief from the automatic stay with respect to the Creditor; therefore, Bankruptcy Rule 4001(a)(3) should be waived.

WHEREFORE, Creditor, WESLAKE COUNTRY CLUB ASSOCIATION, respectfully requests this court to grant its MOTION FOR RELIEF FROM STAY, for Bankruptcy Rule 4001(a)(3) be waived, and for any and all further relief this court deems just and proper.

Respectfully Submitted,
WESLAKE COUNTRY CLUB ASSOCIATION,

By: _____/s/ Dawn L. Moody_____
One of its attorneys

CHARLES M. KEOUGH/DAWN L. MOODY
GABRIELLA R. COMSTOCK/JONATHAN D. WASSELL
BRYAN M. WILEY
KEOUGH AND MOODY, P.C.
Attorney Number 06283567
Attorney for Creditor
114 Est Van Buren
Naperville, IL 60540
(630) 369-2700
X:\client\Weslake CC\Collections\Wilke\BK\Motion for Relief.wpd

**KEOUGH & MOODY COLLECTS DEBTS FOR ASSOCIATIONS.  ANY AND ALL INFORMATION OBTAINED CAN AND WILL BE USED FOR THIS PURPOSE.**

R96-027529

Ⅲ.Ex1
79

```
Mary Ann Stukel          04/01/96
Will County Recorder     11:56
              MSS  Fee:     85.00
R 96027529         Page  1 of 74
```

FATIC # W51635

# DECLARATION OF COVENANTS, CONDITIONS, AND RESTRICTIONS FOR WESLAKE COUNTRY CLUB

This Instrument Was Prepared By
And Should Be Returned To:

**Herbert A. Kessel, Esq.**
Beermann, Swerdlove, Woloshin,
Barezky, Becker, Genin & London
161 North Clark Starret
Suite #2600
Chicago, IL 60601
312/621-9700

1474

8.06 <u>Rules and Regulations</u>.   The Association, through the Board, may make and enforce reasonable rules and regulations governing the use of the Lots, Dwellings, Neighborhoods and Common Area, which rules and regulations shall be consistent with the rights and duties established by this Declaration.

8.07 <u>Indemnification</u>.   The Association shall indemnify every officer and director of the Association against any and all expenses, including court costs and reasonable attorney fees, reasonably incurred by or imposed upon any officer or director in connection with any action, suit or other proceeding (including settlement of any suit or proceeding if approved by the Board) to which he may be made a party by reason of being or having been an officer or directors at the time such expenses are incurred. The officers and directors shall not be liable for any mistake of judgment, negligence, or otherwise, except for their own willful misconduct or nonfeasance. The officers and directors shall have no personal liability with respect to any contract or other commitment made by them, in good faith, on behalf of the Association (except to the extent that such officers or directors may also be members of the Association) and the Association shall indemnify and forever hold each such officer and director free and harmless against any and all liability to others on account of any such contract or commitment. Any right to indemnification provided for herein shall not be exclusive of any other rights to which any officer or director, or former officer or director, may be entitled. The Association shall as a Common Expense maintain adequate general liability and officers' and directors' liability insurance to fund this obligation.

## ARTICLE IX
## COVENANTS FOR MAINTENANCE ASSESSMENTS

9.01 <u>Creation of the Lien and Personal Obligation</u>. Each Owner of a Dwelling or Lot, by acceptance of a deed therefor, whether or not it shall be so expressed in any such deed or other conveyance for each Dwelling or Lot owned by such Owner, hereby covenants and agrees and shall be deemed to covenant and agree to pay to the Association such assessments and user charges as are levied pursuant to the provisions of this Declaration and the By-Laws of the Association. Such assessments and user charges, together with interest thereon and cost of collection, if any, as hereinafter provided, shall be a charge and continuing lien upon the Dwelling or Lot against which such assessment is made. Each such assessment and user charge, together with such interest and costs, shall also be the personal obligation of the Member who was the Owner of such Dwelling or Lot at the time when the same fell due.

9.02 <u>Purpose of Assessments</u>.   The assessments for Common Expenses levied by the Association (or by Declarant acting on its behalf pursuant to Section 4.05(c) hereof) shall be used for the purpose of promoting the recreation, health, safety and welfare of the Members of the Association and in particular, without limiting the foregoing: (i) for the improvement and maintenance of the services and facilities devoted to the use and enjoyment of the Common Area, (ii) for the making of repairs, replacements and additions to the Common Area, defraying the cost of labor, equipment, and material required for the maintenance of the Common Area, (iii) for the operation, care, upkeep, maintenance, replacement and of any common areas of any Neighborhood Association to the extent any such Neighborhood Association has delegated these powers and duties to the Association, and (iv) in general for carrying out the duties of the Board as set forth in this Declaration and the By-Laws of the Association; and for carrying out the purposes of the Association as stated herein and in its Charter.

of any such deficiency. Such certificate shall be conclusive evidence of payment of any assessment therein.

(d) <u>Assessment on Dwellings Under Construction</u>. With regard to any Lots owned by Declarant or any portions of the Property upon which Dwellings are being constructed or have been completed and title has not been conveyed by Declarant, the assessment respecting any such portion of the Property shall be limited to the aggregate amount of actual operating expenses from time to time required to be paid with respect to such portion of the Property provided, however, that in the event Declarant enters into a lease or installment contract for any Dwelling, then Declarant shall be responsible for the payment of assessments on such Dwelling on the same basis as any other Owner as provided in Section 9.06 hereof. Actual operating expenses shall mean those ordinary expenses attributable only to the period in question covering the maintenance and operation of the Property and shall not include capital expenditures, amounts set aside as a reserve for contingencies or replacements, repair items or inventory items to the extent attributable to subsequent periods. The Declarant hereby agrees to satisfy any deficit or shortage in the Association's actual operating expenses for any period in which the Declarant has paid reduced assessments pursuant to this Section 9.03(d), provided, however, that the Declarant's liability hereunder shall not exceed the amount by which the Declarant's assessments have been reduced below the assessments of each other Owner by reason of this Section 9.03(d).

(e) <u>Adjustments to Estimated Budget</u>. If any "estimated cash requirement" proves inadequate for any reason (including nonpayment of any Member's assessment), the Board may at any time levy a further assessment. The Board shall serve notice of such further assessment on all Members by a statement in writing giving the amount and reasons therefor, and such further assessment shall become effective with the monthly assessment payment which is due more than ten (10) days after the delivery or mailing of such notice of further assessment. All Members shall be personally liable for and obligated to pay their respective adjusted monthly amount.

(f) <u>Failure to Prepare Annual Budget</u>. The failure or delay of the Board to prepare an annual or an adjusted estimated budget shall not constitute a waiver or release in any manner of any Member's obligation to pay his share of the estimated cash requirement as herein provided, whenever the same shall be determined and in the absence of any annual estimate or adjusted estimate, each Member shall continue to pay the monthly charge at the then existing monthly rate established for the previous period.

(g) <u>User Charges</u>. The Board (or the Declarant acting pursuant to Section 4.05(c) hereof) may establish, and each Member shall pay, user charges to defray the expense of providing services, facilities or benefits which may not be used equally or proportionately by all of the Members or which, in the judgment of the Board or Declarant, should not be charged to every Member. Such expenses may include, without limitation, fees for the use of facilities located in the Common Area; lease charges; charges predicated on the negligence of any Member or the abuse of any recreational facility; and fees for such other services and facilities provided to Members which should not reasonably be allocated among all of the Members in the same manner as assessments. Such user charges may be billed separately to each Member benefited thereby, or may be added to such Member's assessment as otherwise determined, and collected as a part thereof pursuant to Sections 9.06 and 9.07 hereof. Nothing herein shall require the establishment of user charges as hereinabove autho-

rized, and the Board may elect to treat all or any portion thereof as expenses to be defrayed by assessments.

9.04  Special Assessments for Capital Improvements.  In addition to the annual assessment authorized by Section 9.03, the Board may levy special assessments for the purpose of defraying, in whole or in part, the cost of construction or purchase of a specified capital improvement upon or to the Common Area, and the necessary fixtures and personal property related thereto; provided, however, that, except for special assessments which shall not exceed in any one (1) year the sum of $500.00 per assessed Dwelling or Lot, any such special assessment shall first be approved at a meeting of the Association Delegates by the affirmative votes of Association Delegates entitled to cast at least sixty-seven percent (67%) of all votes cast at a meeting called and held in accordance with the provisions of Section 9.05. The provisions of this Section 9.04 shall not limit the power of the Board, without such prior approval, to levy assessments to reconstruct, replace or restore any portion of the Common Area. The Board shall segregate and maintain a special reserve account (the "Master Fund") to be used solely to make capital expenditures in connection with the Common Area. In addition, at the time the initial sale of each Dwelling is closed, the purchaser of the Dwelling shall pay to the Association an amount equal to two (2) months assessments to be deposited into an account (the "Master Reserve") to be applied and used for start-up costs and as a working capital fund in connection with the initial operation of Common Area and for future working capital needs.

9.05  Notice and Quorum.  Written notice of any meeting called for the purpose of authorizing any special assessments requiring approval pursuant to Section 9.04 hereof shall be sent to all Association Delegates not less than thirty (30) days nor more than sixty (60) days in advance of the meeting. At the opening of such meeting, the presence in person or by proxy of Association Delegates entitled to cast at least sixty percent (60%) of all the votes shall constitute a quorum; provided, that if Association Delegates entitled to cast sixty percent (60%) of all votes do not attend, a second meeting may be called with the same notice requirements as herein provided, except that the quorum therefor shall be reduced to Association Delegates entitled to cast thirty percent (30%) of all votes.

9.06  Allocation of Assessments Among Members.  Both annual and special assessments shall be allocated among the Members by apportioning to each Member an amount equal to that proportion of the total assessment which the number of Unit Memberships held by such Member bears to the total number of Unit Memberships in the Association. Each Neighborhood Association shall be responsible for collecting on behalf of the Association all assessments due the Association from Members whose Dwellings or Lots are subject to assessment by such Neighborhood Association.

9.07  Payment of Assessments.

(a)  Assessments allocated under Section 9.06 hereof to Members shall be added to the assessment made or levied by a Neighborhood Association against each such Member for the common expenses and user charges as provided in the applicable Neighborhood Declaration. Each such Member shall pay the assessment levied by the Association directly to the Association and shall also pay to the Association any assessment levied by the Neighborhood Association as provided in the applicable Neighborhood Declaration. All funds so collected by the Association shall be held in trust for each Neighborhood Association without any deduction or set-off, provided that such payment shall not be deemed made to the Neighborhood Association by any Member until actually received by the Neighborhood Association from the Association.

(b) Upon written demand of an Owner or a Mortgagee at any time, the Association shall furnish such Owner or Mortgagee a written dated certificate signed by an officer of the Association setting forth whether there are any then unpaid annual or special assessments levied against such Owner's Dwelling or Lot. Such Certificate shall be conclusive evidence of payment of any annual or special assessments theretofore levied and not stated therein as unpaid.

9.08 <u>Nonpayment of Assessments</u>.

(a) Any installment of an assessment which is not paid to the Association when due shall be delinquent. The Association may bring an action against the Member personally obligated to pay assessments and recover the same, including interest, costs and reasonable attorneys' fees for any such action, which shall be added to the amount of such assessment and included in any judgment rendered in such action; and the Association may enforce and foreclose any lien it has or which may exist for its benefit.

(b) No Member shall be relieved of personal liability for the assessments and for other amounts due as provided herein by nonuse of the Common Area or abandonment or transfer of ownership of his Dwelling or Lot, provided that upon transfer of ownership of a Dwelling or Lot, the transferor shall not be responsible for assessments accruing after the date of transfer.

(c) The lien of the assessments provided for in Section 9.01 hereof shall be subordinate to the lien of any first mortgage or mortgages now or hereafter placed upon the properties subject to assessment; provided, however, that such subordination shall apply only to the assessments which have become due and payable prior to the earlier of the date the holder of said mortgage takes possession of the Dwelling or Lot, accepts a conveyance of any interest in the Dwelling or Lot or has a receiver appointed in a suit to foreclose his lien. Such taking of possession, conveyance or appointment shall not relieve the holder of said mortgage from liability for any assessments thereafter becoming due, nor from the lien of any such subsequent assessments. Except for the foregoing, the lien for assessments provided for in Section 9.01 shall not be affected by any sale or transfer of a Dwelling or Lot.

## ARTICLE X
## ARCHITECTURAL STANDARDS AND USE RESTRICTIONS

10.01 <u>Purpose</u>. In order to preserve the natural setting and beauty of the Development, to establish and preserve a harmonious and aesthetically pleasing design for the Development, and to protect and promote the value of the Property, the Lots, Dwellings and Neighborhoods, any and all improvements located therein or thereon shall be subject to the restrictions set forth in this Article X. Every grantee of any interest in the Property, by acceptance of a deed or other conveyance of such interest, agrees to be bound by the provisions of this Article X.

10.02 <u>Architectural Review Committee</u>. The Board shall establish the Architectural Review Committee which shall consist of up to five (5) (but not less than three (3)) members, all of whom shall be Owners and who may or may not be members of the Board, provided that prior to the termination of Declarant's right to appoint and remove officers and directors of the Association, such members do not have to be Owners. The regular term of office for each member shall be one year, coinciding with the fiscal year of the Asso-

HER138A 02/19/96.4

-28-

## ARTICLE V
## COVENANTS FOR MAINTENANCE ASSESSMENTS

5.01 *Creation of the Lien and Personal Obligation.* Each Owner of a Dwelling or Lot, by acceptance of a deed therefor, whether or not it shall be so expressed in any such deed or other conveyance for each Dwelling or Lot owned by such Owner, hereby covenants and agrees and shall be deemed to covenant and agree to pay to the Association such assessments and user charges as are levied pursuant to the provisions of the Declaration and the By-Laws of the Association. Such assessments and user charges, together with interest thereon and cost of collection, if any, as hereinafter provided, shall be a charge and continuing lien upon the Dwelling or Lot against which such assessment is made. Each such assessment and user charge, together with such interest and costs, shall also be the personal obligation of the Member who was the Owner of such Dwelling or Lot at the time when the same fell due.

5.02 *Purpose of Assessments.* The assessments for Common Expenses levied by the Association (or by Declarant acting on its behalf pursuant to Section 3.05(c) hereof) shall be used for the purpose of promoting the recreation, health, safety and welfare of the Members of the Association and in particular, without limiting the foregoing: (i) for the improvement and maintenance of the services and facilities devoted to the use and enjoyment of the Common Area, (ii) for the making of repairs, replacements and additions to the Common Area, defraying the cost of labor, equipment, and material required for the maintenance of the Common Area, (iii) for the operation, care, upkeep, maintenance, replacement and of any common areas of any Neighborhood Association to the extent any such Neighborhood Association has delegated these powers and duties to the Association, and (iv) in general for carrying out the duties of the Board as set forth in the Declaration and the By-Laws of the Association; and for carrying out the purposes of the Association as stated herein and in its Charter.

5.03 *Assessment Procedures.*

(a) *Preparation of Estimated Budget.* Each year on or before November 1, the Board shall estimate the total amount necessary to pay the cost of wages, materials, insurance, services, fees, supplies and other items which, in the judgment of the Board, will be required to be provided to the Association or required to meet the Association's obligations during the ensuing calendar year to effect the purposes of the Association, a copy of which estimated budget shall be provided to all Owners at least thirty (30) days prior to its adoption by the Board. The annual budget shall take into account any estimated net operating income or deficit which may result from the operation of the Common Area during such year and income from user charges to be received pursuant to Section 5.03(g) hereof. Said "estimated cash requirement" shall be allocated among and assessed to Members in accordance with the provisions of Section 5.06 hereof. The Board shall give written notice, mailed or delivered, to each Owner no less than ten (10) and no more than thirty (30) days prior to any meeting of the Board concerning the adoption of any proposed budget or any increase or establishment of an assessment.

(b) *Date Payments Due.* On or before January 1 of the ensuing year, and on the first day of each and every month of said year each Member shall be personally obligated to pay, in the manner prescribed by Sections 9.06, 9.07 and 9.08 hereof, one twelfth (1/12th) of such Member's annual assessment, together with all user charges incurred by such Member during the preceding month. If the actual expenditures paid or provided for by the Board during said year shall be more or less than said estimated cash requirement, any net shortage or excess shall be applied as an

adjustment to the installments under the current year's estimate falling due after the amount of such net shortage or excess for the preceding year has been determined.

(c) <u>Commencement of Assessments</u>. The annual assessments provided for herein shall commence for the Dwellings or Lots within the Property on the first day of the month following the conveyance by the Declarant of the first Dwelling or Lot, except as otherwise provided in Section 5.03(d) hereof. The Board shall fix the amount of the annual assessment against each Dwelling or Lot at least thirty (30) days in advance of each annual assessment period and in lieu thereof, the amount of the prior year's annual assessment shall be the fixed amount. The amount of the annual assessment to be fixed by the Board pursuant to this Section 5.03(c) shall not exceed one hundred fifteen percent (115%) of the prior year's assessment unless the assent of Association Delegates entitled to cast at least sixty-seven percent (67%) of all votes is given at a meeting called for that purpose and attended after adequate notice by Association Delegates or their proxies entitled to cast at least sixty percent (60%) of all votes; provided, however, that if Association Delegates entitled to cast sixty percent (60%) of all votes do not attend, a second meeting may be called with the same notice and the quorum therefor shall be reduced to Association Delegates or their proxies entitled to cast at least thirty (30%) of all votes. No such limitations shall apply to any Board appointed by the Declarant. Written notice of any changed amount of annual assessment shall be due on the first day of the month immediately preceding the effective date of the changed assessment. An Owner shall first be liable for payment of the full monthly assessment on the 1st day of the month following conveyance of title to him. This payment shall be in addition to the prorated portion of the monthly assessment which a new Owner agrees to pay to its seller as of the date title to a Dwelling or Lot is conveyed. The Association shall upon demand at any time furnish a certificate in writing signed by an officer or agent of the Association setting forth whether the assessments on a specified Dwelling or Lot have been paid and, if not paid, the amount of any such deficiency. Such certificate shall be conclusive evidence of payment of any assessment therein.

(d) <u>Assessment on Dwelling Units Under Construction</u>. With regard to any Lots owned by Declarant or portions of the Property upon which Dwellings are being constructed or have been completed and title has not been conveyed by Declarant, the assessment respecting any such portion of the Property shall be limited to the aggregate amount of actual operating expenses from time to time required to be paid with respect to such portion of the Property provided, however, that in the event Declarant enters into a lease or installment contract for any Dwelling, then Declarant shall be responsible for the payment of assessments on such Dwelling on the same basis as any other Owner as provided in Section 5.06 hereof. Actual operating expenses shall mean those ordinary expenses attributable only to the period in question covering the maintenance and operation of the Property and shall not include capital expenditures, amounts set aside as a reserve for contingencies or replacements, repair items or inventory items to the extent attributable to subsequent periods. The Declarant hereby agrees to satisfy any deficit or shortage in the Association's actual operating expenses for any period in which the Declarant has paid reduced assessments pursuant to this Section 5.03(d), provided, however, that the Declarant's liability hereunder shall not exceed the amount by which the Declarant's assessments have been reduced below the assessments of each other Owner by reason of this Section 5.03(d). The assessments covering any Dwellings or Lots which have not been sold by the Declarant may be paid on a monthly basis or, at Declarant's option, paid to the Association at the close of each calendar year without interest.

HER138A  02/19/96.4

5.05 <u>Notice and Quorum</u>. Written notice of any meeting called for the purpose of authorizing any special assessments requiring approval pursuant to Section 4.04 hereof shall be sent to all Association Delegates not less than thirty (30) days nor more than sixty (60) days in advance of the meeting. At the opening of such meeting, the presence in person or by proxy of Association Delegates entitled to cast at least sixty percent (60%) of all the votes shall constitute a quorum; provided, that if Association Delegates entitled to cast sixty percent (60%) of all votes do not attend, a second meeting may be called with the same notice requirements as herein provided, except that the quorum therefor shall be reduced to Association Delegates entitled to cast thirty percent (30%) of all votes. For any other meeting of Association Delegates, the presence in person or by proxy of Association Delegates entitled to cast at least fifty one percent (51%) of all the votes shall constitute a quorum.

5.06 <u>Allocation of Assessments Among Members</u>. Both annual and special assessments shall be allocated among the Members by apportioning to each Member an amount equal to that proportion of the total assessment which the number of Unit Memberships held by such Member bears to the total number of Unit Memberships in the Association. Each Neighborhood Association shall be responsible for collecting on behalf of the Association all assessments due the Association from Members whose Dwellings or Lots are subject to assessment by such Neighborhood Association.

5.07 <u>Payment of Assessments</u>.

(a) Assessments allocated under Section 5.06 hereof to Members shall be added to the assessment made or levied by a Neighborhood Association against each such Member for the common expenses and user charges as provided in the applicable Neighborhood Declaration. Each such Member shall pay the assessment levied by the Association directly to the Association and shall also pay to the Association any assessment levied by the Neighborhood Association as provided in the applicable Neighborhood Declaration. All funds so collected by the Association shall be held in trust for each Neighborhood Association without any deduction or set-off, provided that such payment shall not be deemed made to the Neighborhood Association by any Member until actually received by the Neighborhood Association from the Association.

(b) Upon written demand of an Owner or a Mortgagee at any time, the Association shall furnish such Owner or Mortgagee a written dated certificate signed by an officer of the Association setting forth whether there are any then unpaid annual or special assessments levied against such Owner's Dwelling or Lot. Such certificate shall be conclusive evidence of payment of any annual or special assessments theretofore levied and not stated therein as unpaid.

5.08 <u>Nonpayment of Assessments</u>.

(a) Any installment of an assessment which is not paid to the Association when due shall be delinquent. The Association may bring an action against the Member personally obligated to pay assessments and recover the same, including interest, costs and reasonable attorneys' fees for any such action, which shall be added to the amount of such assessment and included in any judgment rendered in such action; and the Association may enforce and foreclose any lien it has or which may exist for its benefit.

(b) No Member shall be relieved of personal liability for the assessments and for other amounts due as provided herein by nonuse of the Common Area or abandonment or transfer of ownership of his Dwelling or Lot, provided that upon

HER138A 02/19/96.4

CH 59

transfer of ownership of a Dwelling or Lot, the transferor shall not be responsible for assessments accruing after the date of transfer.

(c) The lien of the assessments provided for in Section 5.01 hereof shall be subordinate to the lien of any first mortgage or mortgages now or hereafter placed upon the properties subject to assessment; provided, however, that such subordination shall apply only to the assessments which have become due and payable prior to the earlier of the date the holder of said mortgage takes possession of the Dwelling or Lot, accepts a conveyance of any interest in the Dwelling or Lot or has a receiver appointed in a suit to foreclose his lien. Such taking of possession, conveyance or appointment shall not relieve the holder of said mortgage from liability for any assessments thereafter becoming due, nor from the lien of any such subsequent assessments. Except for the foregoing, the lien for assessments provided for in Section 5.01 shall not be affected by any sale or transfer of a Dwelling or Lot.

## ARTICLE VI
## COVENANTS AND RESTRICTIONS AS TO USE AND OCCUPANCY

All Owners shall maintain, occupy and use their Lots, Dwellings and the Common Area only in accordance with the terms of the Declaration and any additional rules and regulations adopted by the Board or by the Members.

The Board shall have full authority to enforce all such rules and regulations by taking all action as may be necessary.

## ARTICLE VII
## COMMITTEES

7.01 _Board Committees_. The Board, by resolution adopted by a majority of the directors in office, may designate one (1) or more committees, each of which shall consist of one (1) or more directors; said committees, to the extent consistent with law and as provided in said resolution, shall have and exercise the authority of the Board in the management of the Association; but the designation of such committees and the delegation thereof of authority shall not operate to relieve the Board, or any individual director, of any responsibility imposed upon it or him by law.

7.02 _Special Committees_. Other committees not having and exercising the authority of the Board in the management of the Association may be designated by a resolution adopted by a majority of the directors present at a meeting at which a quorum is present. Except as otherwise provided in such resolution, members of each such committee shall be Members, and the President of the Association shall appoint the members thereof. Any member thereof may be removed whenever in the Board's judgment the best interests of the Association shall be served by such removal.

7.03 _Term_. Each member of the committee shall continue as such until the next annual meeting of the Board and until his successor is appointed and shall have qualified, unless the committee shall be sooner terminated, or unless such member shall cease to qualify as a member thereof.

7.04 _Chairman_. One (1) member of each committee shall be appointed chairman.

HER138A 02/19/96.4

~~C-12~~  6 0

08/10/2018 11:41 AM

Case 18-11054    Doc 27    Filed 08/14/18    Entered 08/14/18 08:01:59    Desc Main
Document      Page 15 of 17

Resident Transaction Report
Weslake Country Club Association
Dates 09/01/2016 to 08/10/2018

Page: 1

C3-0000  Weslake  
Romeoville IL  60446

McGill Management, Inc.  
1314 N. Rand Road  
Arlington Hts IL  60004

| Unit | Space | Resident | Type | Date | CC | Description | Check | Amount | Balance |
|---|---|---|---|---|---|---|---|---|---|
| 2318 | 03 | Madeline Wilke* | App# | 43907 | | | Beg Bal | | 0.00 |
| | | 161 Whitehill Dr. | Chg | 09/01/2016 | CS | September MA | | 67.00 | 67.00 |
| | | Romeoville IL  60446 | Chg | 10/01/2016 | CS | October MA | | 67.00 | 134.00 |
| | | | Chg | 11/01/2016 | MA | Monthly Assessment | | 67.00 | 201.00 |
| | | 161 Whitehill Dr. | Chg | 11/16/2016 | LF | Late Fee | | 15.00 | 216.00 |
| | | Romeoville IL  60446 | Chg | 12/01/2016 | MA | Monthly Assessment | | 67.00 | 283.00 |
| | | | Chg | 12/16/2016 | LF | Late Fee | | 15.00 | 298.00 |
| | | | Chg | 01/01/2017 | MA | Monthly Assessment | | 70.00 | 368.00 |
| | | | Chg | 01/17/2017 | LF | Late Fee | | 15.00 | 383.00 |
| | | | Chg | 02/01/2017 | MA | Monthly Assessment | | 70.00 | 453.00 |
| | | | Chg | 02/16/2017 | LF | Late Fee | | 15.00 | 468.00 |
| | | | Chg | 03/01/2017 | MA | Monthly Assessment | | 70.00 | 538.00 |
| | | | Chg | 03/17/2017 | LF | Late Fee | | 15.00 | 553.00 |
| | | | Chg | 04/01/2017 | MA | Monthly Assessment | | 70.00 | 623.00 |
| | | | Chg | 04/18/2017 | LF | Late Fee | | 15.00 | 638.00 |
| | | | Chg | 05/01/2017 | MA | Monthly Assessment | | 70.00 | 708.00 |
| | | | Chg | 05/16/2017 | LF | Late Fee | | 15.00 | 723.00 |
| | | | Chg | 06/01/2017 | MA | Monthly Assessment | | 70.00 | 793.00 |
| | | | Chg | 06/16/2017 | LF | Late Fee | | 15.00 | 808.00 |
| | | | Chg | 07/01/2017 | MA | Monthly Assessment | | 70.00 | 878.00 |
| | | | Chg | 07/17/2017 | LF | Late Fee | | 15.00 | 893.00 |
| | | | Chg | 07/26/2017 | LC | #181549 6/2017 | | 285.00 | 1,178.00 |
| | | | Chg | 07/26/2017 | LC | #181550 6/2017 | | 225.00 | 1,403.00 |
| | | | Chg | 08/01/2017 | MA | Monthly Assessment | | 70.00 | 1,473.00 |
| | | | Chg | 08/16/2017 | LF | Late Fee | | 15.00 | 1,488.00 |
| | | | Chg | 09/01/2017 | MA | Monthly Assessment | | 70.00 | 1,558.00 |
| | | | Pay | 09/07/2017 | | Attny ck | 37508256 | -2,509.93 | -951.93 |
| | | | Chg | 10/01/2017 | MA | Monthly Assessment | | 70.00 | -881.93 |
| | | | Chg | 10/04/2017 | LC | Legal Inv.185018 | | 1,021.93 | 140.00 |
| | | | Chg | 11/01/2017 | MA | Monthly Assessment | | 70.00 | 210.00 |
| | | | Chg | 11/16/2017 | LF | Late Fee | | 15.00 | 225.00 |
| | | | Chg | 12/01/2017 | MA | Monthly Assessment | | 70.00 | 295.00 |
| | | | Chg | 12/18/2017 | LF | Late Fee | | 15.00 | 310.00 |
| | | | Chg | 01/01/2018 | MA | Monthly Assessment | | 70.00 | 380.00 |
| | | | Chg | 01/16/2018 | LF | Late Fee | | 15.00 | 395.00 |
| | | | Chg | 02/01/2018 | MA | Monthly Assessment | | 70.00 | 465.00 |
| | | | Chg | 02/19/2018 | LF | Late Fee | | 15.00 | 480.00 |
| | | | Chg | 03/01/2018 | MA | Monthly Assessment | | 70.00 | 550.00 |
| | | | Chg | 03/08/2018 | LC | #189120 1/2018 | | 240.00 | 790.00 |
| | | | Chg | 03/17/2018 | LF | Late Fee | | 15.00 | 805.00 |
| | | | Chg | 04/01/2018 | MA | Monthly Assessment | | 70.00 | 875.00 |
| | | | Chg | 04/16/2018 | LF | Late Fee | | 15.00 | 890.00 |
| | | | Chg | 05/01/2018 | MA | Monthly Assessment | | 70.00 | 960.00 |
| | | | Chg | 05/01/2018 | LC | #190756 3/2018 | | 941.07 | 1,901.07 |
| | | | Cr | 05/01/2018 | CS | BK13 Filed 4/2018 | | -1,831.07 | 70.00 |
| | | | Chg | 06/01/2018 | MA | Monthly Assessment | | 70.00 | 140.00 |
| | | | Chg | 06/17/2018 | LF | Late Fee | | 15.00 | 155.00 |
| | | | Chg | 07/01/2018 | MA | Monthly Assessment | | 70.00 | 225.00 |
| | | | Chg | 07/17/2018 | LF | Late Fee | | 15.00 | 240.00 |
| | | | Chg | 07/30/2018 | LC | #193365 6/2018 | | 150.00 | 390.00 |
| | | | Chg | 07/30/2018 | LC | #193364 5/2018 | | 150.00 | 540.00 |
| | | | Chg | 08/01/2018 | MA | Monthly Assessment | | 70.00 | 610.00 |
| | | | | | | | End Bal | | 610.00 |



NAPERVILLE
114 East Van Buren Avenue
Naperville, IL 60540
phone 630 245 5081
facsimile 630 369 9279

Telephone        (630) 245-5081
Email            collections@kmlegal.com

June 21, 2018

***Via Electronic and Regular Mail***
smcnulty@semradlaw.com
Sean M. McNulty
The Semrad Law Firm, LLC
20 S. Clark Street, 28th Floor
Chicago, IL 60603

      ***RE:   Weslake Country Club Association v. Madeline Wilke***
             ***161 Whitehill Dr., Romeoville***
             ***Bankruptcy Case Number 18-11054***

Dear Mr. McNulty:

    Our office represents the Weslake Country Club Association (hereinafter "the Association") in the above-referenced matter. It has come to our attention that your client has failed to remain current on post-petition assessment payments. As of June 20, 2018, the post-petition balance on this account is $305.00. Enclosed please find a current statement of your client's account.

    As you know, it is your client's responsibility to remain current on her post-petition assessments. When your client fails to make regular, timely payments, the Association lacks adequate protection. Please note that assessments in the amount of $70.00 are assessed to the account each month. If the assessment remains unpaid by the 15th day of the month, a late charge in the amount of $15.00 is assessed to the account. ***If your client does not bring her account current by July 5, 2018, our office will look to file a Motion for Relief from Stay on behalf of the Association shortly thereafter. Any payment of this default should be directed to my Naperville office, in the form of certified funds.***

    Should you have any questions, please contact our office.

                                          Very truly yours,

                                          DAWN L. MOODY
                                          Attorney at Law

DLM/lsg
enclosure

06/20/2018 10:41 AM Case 18-11054 Doc 27 Filed 08/14/18 Entered 08/14/18 08:01:59 Desc Main
Resident Transaction Report
Weslake Country Club Association
Document Page 17 of 17
Dates 09/01/2016 to 06/26/2018
Page: 1

C3-0000 Weslake  
Romeoville IL 60446

McGill Management, Inc.  
1314 N. Rand Road  
Arlington Hts IL 60004

| Unit | Space | Resident | Type | Date | CC | Description | Check | Amount | Balance |
|---|---|---|---|---|---|---|---|---|---|
| 2318 | 03 | Madeline Wilke* | App# | 43907 | | | Beg Bal | | 0.00 |
| | | 161 Whitehill Dr. | Chg | 09/01/2016 | CS | September MA | | 67.00 | 67.00 |
| | | Romeoville IL 60446 | Chg | 10/01/2016 | CS | October MA | | 67.00 | 134.00 |
| | | | Chg | 11/01/2016 | MA | Monthly Assessment | | 67.00 | 201.00 |
| | | 161 Whitehill Dr. | Chg | 11/16/2016 | LF | Late Fee | | 15.00 | 216.00 |
| | | Romeoville IL 60446 | Chg | 12/01/2016 | MA | Monthly Assessment | | 67.00 | 283.00 |
| | | | Chg | 12/16/2016 | LF | Late Fee | | 15.00 | 298.00 |
| | | | Chg | 01/01/2017 | MA | Monthly Assessment | | 70.00 | 368.00 |
| | | | Chg | 01/17/2017 | LF | Late Fee | | 15.00 | 383.00 |
| | | | Chg | 02/01/2017 | MA | Monthly Assessment | | 70.00 | 453.00 |
| | | | Chg | 02/16/2017 | LF | Late Fee | | 15.00 | 468.00 |
| | | | Chg | 03/01/2017 | MA | Monthly Assessment | | 70.00 | 538.00 |
| | | | Chg | 03/17/2017 | LF | Late Fee | | 15.00 | 553.00 |
| | | | Chg | 04/01/2017 | MA | Monthly Assessment | | 70.00 | 623.00 |
| | | | Chg | 04/18/2017 | LF | Late Fee | | 15.00 | 638.00 |
| | | | Chg | 05/01/2017 | MA | Monthly Assessment | | 70.00 | 708.00 |
| | | | Chg | 05/16/2017 | LF | Late Fee | | 15.00 | 723.00 |
| | | | Chg | 06/01/2017 | MA | Monthly Assessment | | 70.00 | 793.00 |
| | | | Chg | 06/16/2017 | LF | Late Fee | | 15.00 | 808.00 |
| | | | Chg | 07/01/2017 | MA | Monthly Assessment | | 70.00 | 878.00 |
| | | | Chg | 07/17/2017 | LF | Late Fee | | 15.00 | 893.00 |
| | | | Chg | 07/26/2017 | LC | #181549 6/2017 | | 285.00 | 1,178.00 |
| | | | Chg | 07/26/2017 | LC | #181550 6/2017 | | 225.00 | 1,403.00 |
| | | | Chg | 08/01/2017 | MA | Monthly Assessment | | 70.00 | 1,473.00 |
| | | | Chg | 08/16/2017 | LF | Late Fee | | 15.00 | 1,488.00 |
| | | | Chg | 09/01/2017 | MA | Monthly Assessment | | 70.00 | 1,558.00 |
| | | | Pay | 09/07/2017 | | Attny ck | 37508256 | -2,509.93 | -951.93 |
| | | | Chg | 10/01/2017 | MA | Monthly Assessment | | 70.00 | -881.93 |
| | | | Chg | 10/04/2017 | LC | Legal Inv.185018 | | 1,021.93 | 140.00 |
| | | | Chg | 11/01/2017 | MA | Monthly Assessment | | 70.00 | 210.00 |
| | | | Chg | 11/16/2017 | LF | Late Fee | | 15.00 | 225.00 |
| | | | Chg | 12/01/2017 | MA | Monthly Assessment | | 70.00 | 295.00 |
| | | | Chg | 12/18/2017 | LF | Late Fee | | 15.00 | 310.00 |
| | | | Chg | 01/01/2018 | MA | Monthly Assessment | | 70.00 | 380.00 |
| | | | Chg | 01/16/2018 | LF | Late Fee | | 15.00 | 395.00 |
| | | | Chg | 02/01/2018 | MA | Monthly Assessment | | 70.00 | 465.00 |
| | | | Chg | 02/19/2018 | LF | Late Fee | | 15.00 | 480.00 |
| | | | Chg | 03/01/2018 | MA | Monthly Assessment | | 70.00 | 550.00 |
| | | | Chg | 03/08/2018 | LC | #189120 1/2018 | | 240.00 | 790.00 |
| | | | Chg | 03/17/2018 | LF | Late Fee | | 15.00 | 805.00 |
| | | | Chg | 04/01/2018 | MA | Monthly Assessment | | 70.00 | 875.00 |
| | | | Chg | 04/16/2018 | LF | Late Fee | | 15.00 | 890.00 |
| | | | Chg | 05/01/2018 | MA | Monthly Assessment | | 70.00 | 960.00 |
| | | | Chg | 05/01/2018 | LC | #190756 3/2018 | | 941.07 | 1,901.07 |
| | | | Cr | 05/01/2018 | CS | BK13 Filed 4/2018 | | -1,831.07 | 70.00 |
| | | | Chg | 06/01/2018 | MA | Monthly Assessment | | 70.00 | 140.00 |
| | | | Chg | 06/17/2018 | LF | Late Fee | | 15.00 | 155.00 |
| | | | | | | | End Bal | | 155.00 |

*Legal Fee- Post Petition Demand*    $150.00        $305.00

*Additional legal fees incurred, but not yet posted to the account*